# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JUAN ECHEVERRY and JORGE ECHEVERRY, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | No. 4:22-CV-153-JAR |
| ) | |
| ELIJAH GOSHERT and MAGELLAN SPORTS FUND, ) ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs Juan Echeverry and Jorge Echeverry's Motion for Default Judgment against Defendants Elijah Goshert and Magellan Sports Fund. (Doc. 8). For the reasons discussed below, the motion will be granted.

## I.   BACKGROUND

Defendants Elijah Goshert ("Goshert") and Magellan Sports Fund ("MSF") purported to operate an investment fund which used legitimate investment strategies to place wagers on sports events. (Doc. 1 at ¶¶ 10-11).[1] Goshert is a resident of Reading, Pennsylvania and believed to be the lone member of MSF, a limited liability company. (*Id.* at ¶¶ 3-4). An October 2018 "Prospectus" from MSF represented that the fund "is driven by a sophisticated computer algorithm" and had achieved a 253% return on investment in the previous year. (Doc. 1-1 at 2). On November 19, 2018, Plaintiff Juan Echeverry ("Juan") made a principal investment of $50,000 in MSF by executing an investor agreement with Defendants. (Doc. 1 at ¶¶ 16-17; Doc.

---

[1] All factual allegations in Plaintiffs' Complaint are accepted as true because Plaintiffs have obtained a Clerk's Entry of Default. (Doc. 6). *See Mueller v. Jones*, No. 2:08-CV-16 JCH, 2009 WL 500837, at *1 n. 2 (E.D. Mo. Feb 27, 2009).

1-2; Doc. 91 at ¶ 3). Juan and Defendants executed subsequent investor agreements on February 21, 2019 and March 20, 2020. (*Id.* at ¶¶ 21-27; Doc. 1-3; Doc. 1-4; Doc. 9-1 at ¶¶ 5, 8). On January 28, 2019, Plaintiff Jorge Echeverry ("Jorge") invested $50,000 into MSF pursuant to a substantially identical investor agreement. (*Id.* at ¶¶ 31-32; Doc. 1-5; Doc. 9-2 at ¶ 3). Jorge invested additional funds through a renewed investor agreement on March 20, 2020. (*Id.* at ¶ 37; Doc. 1-6; Doc. 9-2 at ¶ 6).[2] Under the Investor Agreements, Defendants would assess management fees against Plaintiffs' investments based upon profits achieved during the applicable term. (*Id.* at ¶¶ 20, 26, 35, 38).

In September 2020, Plaintiffs sought to close their accounts and withdraw the funds therein. (*Id.* at ¶¶ 28-29, 40; Doc. 9-1 at ¶ 9; Doc. 9-2 at ¶ 7). Juan and Jorge had $146,798 and $98,809 respectively in available funds at the time of these requests. (*Id.* at ¶¶ 29, 42; Doc. 9-1 at ¶ 10; Doc. 9-2 at ¶ 10). MSF promptly informed Jorge that it would distribute his funds via check. (Doc. 1-7). After numerous follow-up inquiries regarding a delay in distribution, Defendants finally responded to Juan on January 28, 2021. (*Id.* at ¶ 45). MSF admitted they were "behind in process[ing] you[r] and [Jorge's] payments," and in "[f]ull transparency the $ that was put into escrow was used to payout a long time investor first, who liquidated his account." (Doc. 1-8). The MSF representative recommended that Juan reach out to Goshert directly but cautioned that Goshert's "responses are generally really delayed." (*Id.*). On March 5, 2021, MSF e-mailed Plaintiffs planned distribution schedules which would result in complete disbursement by April 2021. (Docs. 1-9, 1-10).

---

[2] Except for the change of parties and certain financial terms, each of these investor agreements is substantially similar. Accordingly, the Court will refer to them collectively as the "Investor Agreements" unless it is necessary to differentiate.

Defendants failed to make any distributions to Plaintiffs within this timeframe. (Doc. 1 at ¶¶ 53-54). Upon inquiry from Plaintiffs, MSF responded on April 13, 2021 that "nobody is more frustrated than [MSF]," but their "lawyers have taken over the discussions as on our end we are far behind and things are compounding." (Doc. 1-11 at 1). On June 17, 2021, after further attempts by Plaintiffs to regain their funds, MSF stated: "Money is absolutely not lost, however we are dependent on full liquidation from the books in order [to] complete payouts. I agree the timeline is not acceptable, our objective is to make all investors whole, and we believe we have a path to get this done." (Doc. 1-12 at 1). Subsequent to this e-mail, Defendants went so far as to claim the "check was in the mail" but must have been misplaced. (Doc. 1 at ¶ 59). To date, Plaintiffs have not received any distributions of their funds. (Doc. 9-1 at ¶ 27; Doc. 9-2 at ¶ 21).

On February 8, 2022, after getting the runaround for over a year, Plaintiffs filed this lawsuit. Plaintiffs seek damages in the amount of $245,607, which is the combined value of Plaintiffs' investments with MSF at the time of the attempted withdrawal. (Doc. 1 at ¶¶ 74 83, 89). Plaintiffs bring claims for Fraud (Count I), Breach of Fiduciary Duty (Count II), and Breach of Contract (Count III). Plaintiffs obtained service on Defendants on February 18, 2022. (Docs. 3-4). After Defendants failed to file any Answer, Plaintiffs obtained a Clerk's Entry of Default on March 21, 2022. (Doc. 6). In accordance with this Court's Order (Doc. 7), Plaintiffs filed the instant Motion for Default Judgment on May 6, 2022. (Doc. 8). On May 31, 2022, after Defendants failed to file any response, the Court granted Defendants a final opportunity to respond within 10 days and ordered Plaintiffs to use best efforts to promptly notify Defendants of their pending motion. (Doc. 10). The Order was also mailed to Defendants' last known address. That deadline has passed without any response, and Plaintiffs' Motion for Default Judgment is therefore ready for disposition.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 55 governs default judgments. First, under Rule 55(a), the party seeking default judgment must obtain an entry of default by the Clerk of Court. *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Second, under Rule 55(b), the party may request entry of default judgment by either the Clerk of Court or the Court itself. *See* Fed. R. Civ. P. 55(b)(1)-(2); *see also United States v. Daut*, No. 4:21-CV-73-SMR-SHL, 2022 WL 1467982, at *2 (S.D. Iowa Apr. 29, 2022) (describing two-step process).

"The entry of default judgment is not favored by the law" and "should be a rare judicial act." *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (citations omitted). The Federal Rules of Civil Procedure "commit the entry of a default judgment against a party to the sound discretion of the trial court." *F.T.C. v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977) (citing Fed. R. Civ. P. 55(b)). "Prior to the entry of a discretionary default judgment, th[e] Court should satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint and the substantive merits of the plaintiff's claim." *Vardiman v. United States*, No. 4:17-CV-2358 RLW, 2020 WL 5441109, at *2 (E.D. Mo. Sept. 10, 2020) (citation omitted). Although default judgments are disfavored under the law, "entry of default judgment … is an appropriate exercise of a court's discretion for a party's repeated failure to comply with court orders due to willfulness or bad faith." *Monsanto Co. v. Hargrove*, No. 4:09-CV-1628 CEJ, 2011 WL 93718, at *2 (E.D. Mo. Jan. 11, 2011) (citation omitted).

"Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotation

omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."). Once the court determines a party is entitled to default judgment, it must ascertain the amount of damages and determine any other appropriate relief. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000). When a court enters default judgment on a claim for an uncertain amount of damages, it may determine damages by holding a supplemental hearing or based upon affidavits and documentary evidence supplied by the plaintiff. *See Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (finding evidentiary hearing unnecessary when damages "are capable of being computed on the basis of facts of record").

### III.   ANALYSIS

Plaintiffs' Legal Claims

Accepting all facts in the Complaint as true, the Court finds that Plaintiffs are entitled to default judgment because the unchallenged facts constitute a legitimate claim of fraud, breach of contract, and breach of fiduciary duty. Defendants have failed to file any responsive pleading despite multiple opportunities and sufficient time. *See Country Mut. Ins. Co. v. Wade*, No. 4:10-CV-193 TIA, 2010 WL 11583292, at *1 (E.D. Mo. July 1, 2010) ("When determining whether a default judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer, or other responsive pleading, prior to an entry of Default Judgment."). The Investor Agreements established that the funds operated on an annual basis but early withdrawals on a quarterly basis were available. (Doc. 1-4 at § 3; Doc. 1-6 at § 3). Upon request by Plaintiffs in September 2020 and for approximately nine months thereafter, MSF repeatedly represented that Plaintiffs could withdraw their funds without issue. (Docs. 1-7 – 1-11). To date, Plaintiffs have not received any of their funds.

To summarize, Defendants knowingly made numerous false, material representations concerning Plaintiffs' ability to withdraw their funds. Plaintiffs reasonably relied upon these representations and suffered injuries caused by Defendants' fraudulent actions. *See Paul v. Farmland Indus., Inc.*, 37 F.3d 1274, 1276-77 (8th Cir. 1994) (citation omitted) (stating elements for fraud under Missouri law); *see also Trimble v. Pracna*, 167 S.W.3d 706, 712 n.8 (Mo. banc 2005) (citation omitted) (same).³ Defendants breached the Investor Agreements by refusing to distribute Plaintiffs' funds. *See Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 941 (8th Cir. 2013) (citation omitted) (stating requirements for breach of contract under Missouri law). Moreover, by accepting and entirely controlling Plaintiffs' investments, Defendants took on fiduciary duties which they violated by perpetrating a fraud, breaching the Investor Agreements, and misleading Plaintiffs regarding the status of their funds. *See Hibbs v. Berger*, 430 S.W.3d 296, 312 (Mo. Ct. App. 2014) (citation omitted) (describing elements for breach of fiduciary duty claim). By refusing to distribute the funds they contractually owed and repeatedly promised to Plaintiffs, Defendants have committed fraud, breached the Investor Agreements, and violated the fiduciary duties owed to Plaintiffs as their investors.⁴

Plaintiffs' Damages

Alleged damages amounts are not accepted as true upon entry of default judgment. *Murray*, 595 F.3d at 871; *see also* Fed. R. Civ. P. 8(b)(6). Instead, per Fed. R. Civ. P.

---

³ Plaintiffs do not discuss which law should apply, and the Investor Agreements do not include a choice-of-law provision. It is possible that Pennsylvania law should apply considering that is where Goshert operated and incorporated MSF. (Doc. 1 at ¶¶ 3-4). The Court would reach the same conclusions if it applied Pennsylvania law.

⁴ The Court notes that Plaintiffs cannot recover for both breach of contract and fraud claims for the same underlying conduct. *See Paul*, 37 F.3d at 1276 (citation omitted) ("A fraud claim is permitted only if it arises from acts that are separate and distinct from the contract."). Because Plaintiffs do not seek any such double-recovery, the Court will not delve further into whether Defendants committed fraud separate and distinct from their breach of the Investor Agreements. Similarly, the Court need not address any potential overlap as to the fiduciary duty claim because Plaintiffs only seek damages in the amount of their funds still held by Defendants.

55(b)(2)(A)-(B), a court entering default judgment may hold an evidentiary hearing in order to conduct an accounting or determine damages. But where "the findings and judgment regarding damages in the instant case are capable of being computed on the basis of facts of record . . . the district court need not hold an evidentiary hearing on the issue of damages." *Taylor*, 859 F.2d at 1333 (internal quotations omitted); *see also Pope v. United States*, 323 U.S. 1, 12 (1944). The "need for a hearing is within the sound discretion of the district court." *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008) (citation omitted).

An evidentiary hearing on damages is unnecessary in this case because Plaintiffs' damages are capable of easy computation and supported by extensive documentary evidence. *See id.* Juan and Jorge respectively seek $146,798 and $98,809 in damages in their Motion for Default Judgment. (Doc. 9 at 7).[5] The requested damages reflect the amount held in Plaintiffs' accounts when they sought to withdraw their funds. (Doc. 1 at ¶¶ 29, 42). On multiple occasions, Defendants confirmed that these amounts were accurate, and Plaintiffs were entitled to withdraw the funds. (Docs. 1-7 – 1-12). Plaintiffs have sworn under penalty of perjury that they held these amounts in the applicable accounts and have not received any distribution from Defendants. (Doc. 9-1 at ¶¶ 10, 27; Doc. 9-2 at ¶¶ 9, 20). *See 900 Broadway v. AltosGroups*, No. 4:20-CV-461 NKL, 2021 WL 681433, at *2 (W.D. Mo. Feb. 22, 2021) (citation omitted) ("Damages may be proven by a sworn affidavit and supporting documentation."); 10A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2688 (4th ed. 2021) (recognizing courts have held hearing unnecessary where plaintiff has provided sufficient documentary proof to establish judgment amount).

---

[5] Plaintiffs' Complaint seeks damages for "interest, costs, fees, [and] punitive damages" in addition to compensatory damages. (Doc. 1 at 10-12). Plaintiffs have not offered any further information regarding these alleged damages, and the Motion for Default Judgment does not request such additional damages. (Docs. 8-9). The Court will enter judgment solely in the amounts held in Plaintiffs' respective accounts and sought in the Motion for Default Judgment.

Where plaintiffs obtain default judgment against a fraudulent investment scheme, Eighth Circuit precedent supports awarding damages in the amount of plaintiffs' investments without an evidentiary hearing. In *Cutcliff v. Reuter*, 791 F.3d 875 (8th Cir. 2015), plaintiffs obtained default judgment against the operator of a fraudulent investment scheme. The Eighth Circuit affirmed the awarding of damages without an evidentiary hearing after considering that "the plaintiffs submitted affidavits and documentary proof evincing how much they invested in the complained-of scheme." *Id.* at 883. The district court did not abuse its discretion because the "amount of the plaintiffs' investments was readily discernible on the basis of undisputed evidence in the record." *Id.* Here, Plaintiffs have provided ample evidence establishing their holdings in Defendants' investment funds, and no further evidence is necessary to confirm the actual damages suffered by Plaintiffs. The Court will enter default judgment in favor of Juan and Jorge against Defendants in the respective amounts of $146,798 and $98,809.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Juan Echeverry and Jorge Echeverry's Motion for Default Judgment against Defendants Elijah Goshert and Magellan Sports Fund (Doc. 8) is **GRANTED**. The Court will enter default judgment in favor of Plaintiffs Juan Echeverry and Jorge Echeverry against Defendants in the respective amounts of $146,798 and $98,809. A separate Judgment of Default will accompany this Memorandum and Order.

Dated this 21st day of June, 2022.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE